# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANDOVER HEALTHCARE, INC.<br><br>        Plaintiff,<br><br>v.<br><br>3M COMPANY,<br><br>        Defendant. | Civil Action No. 1:13-cv-00843-LPS |

## PLAINTIFF ANDOVER'S ANSWERING BRIEF IN OPPOSITION TO 3M'S MOTION TO TRANSFER

CONNOLLY GALLAGHER LLP
Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Mary I. Akhimien (#5448)
The Brandywine Building
1000 West Street
Wilmington, DE 19801
Phone: (302) 888-6318
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
makhimien@connollygallagher.com

AKERMAN SENTERFITT
David Brafman, Esq.
Peter A. Chiabotti, Esq.
222 Lakeview Avenue, Fourth Floor
West Palm Beach, FL 33401-6147
Phone: (561) 653-5000
david.brafman@akerman.com
peter.chiabotti@akerman.com

*Attorneys for Plaintiff Andover Healthcare, Inc.*

{26998560;1}

**Table of Contents**

Introduction ..................................................................................................................................1

Background ..................................................................................................................................2

    A  3M's Current Patent Infringement ................................................................................2

    B.  The Inapplicable 2010 Product Packaging Case Release ...................................................3

Legal Standard .............................................................................................................................4

    A.  3M's Second-Filed Minnesota Action, Containing Meritless Claims About An Inapplicable Settlement Agreement, Does Not Justify Transfer.......................................5

        1.  The Forum Selection Clause Does Not Apply To Andover's Claim ..........................5

        2.  The 2010 Release Is Inapplicable ................................................................................7

        3.  The Later-Filed Minnesota Action Does Not Justify Transfer Because It Is Likely To Be Dismissed Or Transferred Here ............................................................8

    B.  The *Jumara* Factors Do Not Support Transfer ................................................................8

        1.  Private Interest Factors Favor Denying The Motion ...................................................8

            a.  Plaintiff's Choice of Form Favors Delaware ........................................................8

            b.  Defendant's Forum Preference ............................................................................10

            c.  Location Of Operative Events .............................................................................10

            d.  Convenience Of Parties........................................................................................10

            e.  Convenience Of Witnesses ..................................................................................12

            f.  Location Of Books And Records ........................................................................13

        2.  Public Interest Factors Favor Denying The Motion ..................................................13

            a.  Public policy Weighs Against Transfer ..............................................................13

            b.  The Remaining Factors Are Neutral ...................................................................14

        3.  On Balance, The *Jumara* Factors Favor Denying 3M's Motion To Transfer.............14

Conclusion .................................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Animal Health International, Inc. v. Livingston Enterprises, Inc.*,
   No. 12-00369, 2012 WL 1439243 (D.C. Col. April 26, 2012)..........................................7, 8

*BASF Corp. v. Symington*,
   50 F.3d 555 (8th Cir. 1995) ....................................................................................................9

*Crosley Corp. v. Hazeltine Corp.*,
   122 F.2d 925 (3d Cir. 1941) ...................................................................................................6

*Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*,
   Case No. 01–199–SLR, 2001 WL 1617186 (D. Del. Nov. 28, 2001) ..................................10

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*,
   525 F.3d 1353 (Fed. Cir. 2008)...............................................................................................9

*Genentech, Inc. v. Eli Lilly & Co.*,
   998 F.2d 931, 938 (Fed. Cir. 1993)........................................................................................6

*Graphics Props. Holdings Inc. v. ASUS Computer Int'l, Inc.*,
   No., 12-210-LPS, 2013 WL 3295618 (D. Del. Jun. 28, 2013)(Stark, J.)...................... 4, 5, 11

*Hazelquist v. Guchi Moochie Tackle Co., Inc.*,
   437 F.3d 1178 (Fed. Cir. 2006)...............................................................................................9

*In re Link_A_, Media Devices Corp.*,
   662 F.3d 1221 (Fed. Cir. 2011)..............................................................................................11

*In re TS Tech USA Corp.*,
   555 F.3d 1315 (Fed. Cir. 2008)..............................................................................................12

*Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd, et al.*,
   797 F.Supp.2d 472 (D.Del. Jun. 22, 2011) (Stark, J.).......................................... 5, 10, 11, 12

*International Paper Co. v. Strid*,
   No., No. 05-4069-NKL, 2005 WL 20008640 (W.D.Mo. Aug. 22, 2005) ............................10

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ............................................................................................passim

*Kahn v. Gen. Motors Corp.*,
   889 F.2d 1078 (Fed. Cir. 1989)...............................................................................................6

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
 518 F.3d 897 (Fed. Cir. 2008)......................................................................................................6

*Midwest Fed. Savings and Loan Assoc. of Minneapolis v. Green Tree Acceptance, Inc.*,
 1989 WL 411604 (D. Minn. 1989) ..............................................................................................8

*Praxair, Inc. v. ATMI, Inc.*,
 No., 03-1158-SLR, 2004 WL 883395 (D.Del. Apr. 20, 2004)................................................11

*Shutte v. Armco Steel Corp.*,
 431 F.2d 22 (3d Cir. 1970) ........................................................................................................10

*Swish Marketing, Inc.*,
 669 F. Supp. 2d at 79..................................................................................................................9

*TriStrata Tech., Inc. v. Emulgen Labs., Inc.*,
 537 F. Supp. 2d 635 (D. Del. 2008) .........................................................................................15

*Trustco Bank v. Automated Transactions LLC*,
 Civ. No. 12-613-SLR at 11 (D. Del., Mar. 27, 2013) ............................................................14

*Wacoh Co. v. Kianix Inc.*,
 2012 WL 70673 (D. Del. Jan. 9, 2012) ....................................................................................15

*Wilton v. Seven Falls Co.*,
 515 U.S. 277 (1995) ....................................................................................................................6

**Statutes**

28 USC § 1404(a) ...............................................................................................................................4

## Introduction

One of the largest employers in Minnesota, 3M prefers to litigate there. However, 3M is also a huge Delaware corporation operating on an international scale and infringing in this district. Litigating here does not pose a "unique or unusual burden" on 3M. Thus, 3M lacks sufficient basis for overturning Andover's choice of forum for this patent infringement litigation.

Apparently realizing this, 3M has attempted to bolster its stab at forum shopping by suing Andover in the District of Minnesota for a declaration that 3M is not liable for patent infringement arising before June 2, 2010, in light of a release executed by the parties in settling a product packaging dispute three years ago. 3M argues that because that settlement agreement contains a forum selection clause for actions "arising out of" the settlement agreement, Andover's infringement claim must be heard in Minnesota.

3M's maneuver fails to aid its deficient motion to transfer. First, 3M's argument is the ultimate tail-wagging-the-dog. The forum selection clause 3M relies upon only states that "Any dispute or action *arising out of* this Settlement Agreement shall be resolved exclusively in the state or federal courts located in Hennepin or Ramsey County in the State of Minnesota." In no way does Andover's patent infringement claim arise out of the parties' 2010 settlement agreement from an unrelated case.

In any event, the release that forms the basis for 3M's claim is on its face irrelevant to Andover's infringement claim. By its terms, the release was explicitly and unambiguously limited to "past" claims, and, furthermore, liabilities arising after June 2, 2010 were explicitly and unambiguously excluded from the release:

> [E]ach Party specifically releases … any and all *past* claims …. The Parties each acknowledge and agree *that this release does not extend to claims, demands, actions, liabilities, or causes of action arising after the Effective Date of this Agreement.*

*See* D.I. 14-1 ¶ 6 (emphasis added).  As pled in its Amended Complaint here, Andover's infringement claim pertains only to infringement occurring "since June 3, 2010."  *See* D.I. 9 ¶ 09.  Thus, Andover's claim relates only to claims, actions, and liabilities arising after the June 2, 2010 effective date of the settlement agreement, making the release inapplicable.  3M's declaratory judgment claim is pretextual and meritless.

Because Andover's infringement suit was filed first, because the forum selection clause and release of the 2010 settlement agreement are irrelevant here, and because 3M has not otherwise shown why Andover's choice of forum should be disturbed, Andover respectfully requests that 3M's motion to transfer be denied.

## Background

**A**     **3M's Current Patent Infringement**

Defendant 3M manufactures and sells a line of cohesive wrap bandages under the brand name Coban, several of which infringe Plaintiff Andover's patent-in-suit.  D.I. 12 at 3.  3M is a Delaware corporation and has admitted that it has sales representatives tasked with securing sales of the infringing products in Delaware.  *See* D.I. 12 at 17, 13 at ¶ 7.  It has further admitted that those products have in fact been sold in Delaware.  *See id*.  3M also has a manufacturing facility located in Newark, Delaware, though it does not appear to make the infringing products.  *Chiabotti Decl*. at ¶ 2.

Plaintiff Andover sells products that compete with 3M's Coban products in Delaware and elsewhere and is the owner of United States Patent No. 6,156,424, entitled "Cohesive Products."  Andover, based in Massachusetts, does not have any operations, offices, employees, witnesses, or documents in Minnesota.  *Murphy Decl*. at ¶ 2.

B.     **The Inapplicable 2010 Product Packaging Case Release**

3M's duplicative Minnesota action centers on its allegation that Andover's damages are barred or limited by a settlement agreement with a release executed three years ago to resolve an unrelated product packaging case. However, nothing in the settlement agreement and release justifies rejection of the first-filed rule or otherwise supports transfer.

In particular, in 2010 3M sued Andover for alleged copyright infringement and other claims over certain product packaging and inserts. *See Chiabotti Decl.* Ex. B (Complaint in *3M Company and 3M Innovative Properties Company vs. Andover Healthcare, Inc.,* Case # 10-cv-01564-JNE-AJB, the "2010 Product Packaging Case"). That case had nothing to do with patent infringement.

The 2010 Product Packaging Case was settled in less than 2 months, with the parties executing a Settlement Agreement and Release of Claims, a copy of which is attached as Exhibit 1 to 3M's Declaration (D.I. 14) in this case (the "Settlement Agreement"). The Settlement Agreement included the following mutual release of past claims:

> In exchange for the terms of this Agreement, including but not limited to the warranties, representations and undertakings of Andover made in paragraphs 1-5 above and the mutual releases provided herein, each Party specifically releases, waives, and forever discharges the other Party, its successors in interest, its past, present and future assigns, officers, directors, subsidiaries, affiliates, insurers and underwriters, *from any and all **past** claims*, damages, demands, actions, liabilities and causes of actions, of every kind and character, whether asserted or asserted, whether known or unknown, suspected or unsuspected, in law or in equity, for or by reason of any matter, cause or thing whatsoever related to the Parties' respective compression products arising prior to the Effective Date. 3M further agrees that promptly upon execution of the Agreement by both Parties, 3M will take the necessary steps to dismiss the Action with prejudice. The Parties each acknowledge and agree that *this release does not extend to claims, demands, actions, liabilities, or causes of action arising after the Effective Date* of this Agreement.

*See* D.I. 14-1 ¶ 6 (emphasis added).

The Settlement Agreement also contained a forum selection clause requiring any action "arising out of this Settlement Agreement" to be resolved in Minnesota.

> This Settlement Agreement shall be governed by, subject to and construed in accordance with the laws of the State of Minnesota and applicable federal laws without regard to conflict of law principles. Any dispute or action arising out of this Settlement Agreement shall be resolved exclusively in the state or federal courts located in Hennepin or Ramsey County in the State of Minnesota. Both parties unconditionally submit to the personal jurisdiction and venue of such courts for purposes of this Settlement Agreement.

As explained below, the June 2, 2010 Settlement Agreement is inapplicable to Andover's claim in this case for patent infringement occurring since June 3, 2010.

**Legal Standard**

The burden to establish that transfer is appropriate, thereby disrupting a plaintiff's choice of forum, is a heavy one. *Graphics Props. Holdings Inc. v. ASUS Computer Int'l, Inc.*, No., 12-210-LPS, 2013 WL 3295618, at *5 (D. Del. Jun. 28, 2013)(Stark, J.); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

More particularly, a motion brought under 28 USC § 1404(a) requires the Court to undertake a two-step analysis. The first step merely asks whether the action could have been brought in the District of Minnesota, which Andover does not dispute. However, the Court must also balance various factors set forth in *Jumara* to determine whether, under the particular facts of this case, the request to transfer venue should be granted. *Jumara*, 55 F.3d at 879-80. In cases like this one where the defendant is a large corporation "with operations on a national or international scale," this Court has repeatedly held that the balance of factors must "strongly" favor the defendant in order to frustrate the plaintiff's choice of forum:

> [U]nless the balance of convenience of the parties is ***strongly*** in favor of defendant, the ***plaintiff's choice of forum should prevail***. ***Unless the defendant "is truly regional in character"*** - that is, it operates essentially exclusively in a region that does not include Delaware - ***transfer is*** often ***inappropriate***. When

> transfer is sought by a ***defendant with operations on a national or international scale***, that defendant must prove that litigating in Delaware would pose a ***unique*** or ***unusual*** burden on [its] operations.

*Graphics Props.*, 2013 WL 3295618, at *5 (internal citations omitted) (emphasis added); *see also Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd, et al.*, 797 F.Supp.2d 472, 481 (D.Del. Jun. 22, 2011) (Stark, J.).

As detailed below, 3M has failed to show that the balance of factors strongly favors transfer. Indeed, 3M -- a Delaware corporation with $29.9 billion in annual revenues and operations throughout the US and internationally – has failed to articulate even a single "unique or unusual burden" that litigating this case in Delaware would have on its operations, something that it cannot credibly do.

**A.    3M's Second-Filed Minnesota Action, Containing Meritless Claims About An Inapplicable Settlement Agreement, Does Not Justify Transfer**

**1.    The Forum Selection Clause Does Not Apply To Andover's Claim**

After Andover filed this action, 3M filed the Minnesota action requesting a Declaratory Judgment that 3M has no liability in *this* action or that Andover's damages in *this* action are limited by a release contained in settlement agreement resolving a 2010 product packaging dispute.[1] This declaratory judgment action is nothing more than 3M seeking an advanced ruling

---

[1] 3M's one other cause of action, for breach of contract, alleges that Andover breached the parties' 2010 settlement agreement by filing this lawsuit. The word "frivolous" is overused in litigation, but applicable here because the settlement agreement does not contain a covenant not to sue. Andover cannot have breached by filing a lawsuit when it never agreed to not file one. *See Midwest Fed. Savings and Loan Assoc. of Minneapolis v. Green Tree Acceptance, Inc.*, 1989 WL 411604 at *13 (D. Minn. 1989) ("A party to a release does not promise to refrain from taking any action….Since a release does not include a promise not to take any action, the mere filing of a lawsuit operates neither as a breach of the release, nor as a basis for a damages claim."). Andover has moved to dismiss the Minnesota case or, alternatively, have it transferred here.

in Minnesota on its affirmative defense in this action. The forum selection clause does not apply here, and declaratory judgment action does not overcome the first-to-file rule.

Nearly fifty years ago, the Third Circuit adopted what has become known as the 'first-filed' rule." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941). Where there are two courts that could properly exercise jurisdiction over a dispute, it is generally the court which first acquired jurisdiction over the parties and issues that proceeds with the dispute. In the Third Circuit's words, "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Id*.

In patent cases, the Federal Circuit similarly applies the rule favoring the forum of the first-filed case "as a principle of sound judicial administration." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). Exceptions to the general rule are made only if compelling reasons exist "that would make it unjust or inefficient to continue the first-filed action." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993*), rev 'd on other grounds*, *Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995). Consideration of these factors mirrors the analysis performed by district courts in determining whether to transfer venue. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008).

Even if were true that the release in the Settlement Agreement limits Andover's damages in this action, 3M has already pled release as an affirmative defense in its Answer pleading here. 3M's after-filed declaratory judgment action in Minnesota is redundant and not a basis to transfer Andover's first-filed infringement claim.

In an attempt to avoid the first-filed rule, 3M asserts that its release defense/pseudo-claim must be heard in Minnesota because (a) the scope of the release must be interpreted as part of its defense, and (b) the Settlement Agreement contains a forum selection clause.

3M is attempting to stand everything on its head. The forum selection clause only selects Minnesota for actions "arising out of this Settlement Agreement." The action at issue here is Andover's patent infringement claim. 3M's allegation of release is merely a defense to Andover's claim, even if cloaked in a request for declaratory judgment. Because the true claim here – Andover's patent infringement claim – does not arise out of the Settlement Agreement, the forum selection clause is irrelevant. *c.f. Animal Health International, Inc. v. Livingston Enterprises, Inc.*, Case No. 12-cv-00369-LTB, 2012 WL 1439243 (D.C. Col. April 26, 2012)(applying first-to-file rule despite a tangentially related forum selection clause to deny the second-filed forum).

### 2.     The 2010 Release Is Inapplicable

3M's motion should also be denied also because the release in the Settlement Agreement (which is 3M's only hook to get to the forum selection clause) has no effect on Andover's patent infringement claim. The June 2, 2010 release was expressly limited to claims in the "past": "each Party specifically releases … any and all *past* claims ..." D.I. 14-1 at ¶ 6. (emphasis added) Furthermore, the release expressly preserved claims and liabilities after the date of the release:

> The Parties acknowledge and agree that this release ***does not extend to*** claims, demands, actions, liabilities, or causes of action ***after*** the Effective Date of this Agreement.

*Id.* (emphasis added) Significantly, Andover's infringement claim in this litigation is limited to infringement by 3M occurring ***"since June 3, 2010"*** -- ***after*** the Effective Date of the Settlement Agreement and Release. *See* D.I. 9 ¶ 9.

The release explicitly carves out claims and liabilities after June 2, 2010. Although 3M may have been released from any liability arising from making or selling products before that

date, it expressly was not released from any liability arising from such activities it chose to undertake after that date. *Hazelquist v. Guchi Moochie Tackle Co., Inc.*, 437 F.3d 1178, 1180 (Fed. Cir. 2006) ("Our case law clearly states that each act of patent infringement gives rise to a separate cause of action"); *see also E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*, 525 F.3d 1353, 1362 (Fed. Cir. 2008). By its unambiguous, express terms, the release that is the subject of 3M's Minnesota action is irrelevant to Andover's patent infringement claim here. Thus, in light of the unambiguous language of the release, 3M has failed to state a claim.

### 3. The Later-Filed Minnesota Action Does Not Justify Transfer Because It Is Likely To Be Dismissed Or Transferred Here

The Minnesota action consists of a meritless breach of contact claim and a pointless attempt to turn the affirmative defense of release into an offensive declaratory judgment action. Because of the deficiencies with 3M's claims explained above, Andover has filed a motion to dismiss the Minnesota case or, in the alternative, have it transferred here under the first-filed rule.

## B. The *Jumara* Factors Do Not Support Transfer

3M's motion to transfer should be denied in view of the traditional *Jumara* factors.

### 1. Private Interest Factors Favor Denying The Motion

#### a. Plaintiff's Choice of Form Favors Delaware

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly

disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal citations and quotations omitted). A plaintiff's choice of forum will receive deference as long as the plaintiff has "some legitimate reason" for selecting the forum. *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, Case No. 01–199–SLR, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) (internal citations omitted).

3M's decision to incorporate in Delaware makes the District of Delaware a predictable and legitimate venue for bringing suit against it. "[W]hen a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware." *Intellectual Ventures I*, 797 F.Supp.2d at 482; *see also Praxair, Inc. v. ATMI, Inc.*, No., 03-1158-SLR, 2004 WL 883395, at *2 (D.Del. Apr. 20, 2004)("By availing themselves of the advantages of Delaware's corporate laws, defendants have voluntarily exposed themselves to the risk of suit in Delaware").

Knowing this, 3M stretches the Federal Circuit's decision *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) to suggest that less deference should be given to Andover's choice because Andover is not a Delaware corporation. But *In re Link_A_Media Devices Corp.* does not go so far. Plaintiff's choice of forum should only not be given strong deference if there is no legitimate reason for the forum. Here, the fact that 3M is incorporated in Delaware, enjoying the benefits and protections afforded by Delaware law, is enough of a legitimate reason. *Graphics Props.*, 2013 WL 3295618, at *5. As such, Andover's choice of Delaware as a litigation forum is entitled to "paramount consideration" and "significant deference." *Id.*

    **b.    Defendant's Forum Preference**

3M prefers to litigate this case in Minnesota, where it is one of the state's largest employers. But a defendant's preference is due far less weight than the significant deference given to plaintiff's, reducing the significance of this factor.

    **c.    Location Of Operative Events**

3M admits to having sold products to Delaware customers. D.I. 12 at 17. 3M also admits to having 3M sales representatives specifically for Delaware to make those sales. D.I. 13 at ¶ 7. 3M then tries to brush aside the statutory definition of what constitutes patent infringement—a sale of an infringing product in Delaware—to argue that the operative facts arose almost exclusively in Minnesota.

Doubling down on its attempt to discount the relevance of its purposeful sales in Delaware, 3M cites to a factually inapposite case for the proposition that since 3M products are sold everywhere, venue is appropriate only where 3M says so. In contrast to the facts in *In re TS Tech USA Corp.*, where the infringing product was only one component part of the end product purchased nationwide by the consumer (a component in a headrest installed in a car), here, consumers directly purchase the infringing 3M product. *See* 555 F.3d 1315 (Fed. Cir. 2008). Because 3M's infringing Coban product is not a component, but the end product purchased by customers in Delaware, 3M's admitted sales of the product in Delaware causes this factor to favor Delaware.

    **d.    Convenience Of Parties**

The next factor to be considered is "the convenience of the parties as indicated by their relative physical and financial condition." *Jumara,* 55 F.3d at 879. There is no question that

3M's financial condition will allow it to litigate effectively in Delaware, as it is currently doing so and has done so over the years in other lawsuits.[2]  3M's size, revenues and worldwide physical presence dwarfs those of Andover.  According to 3M's 2012 10-K SEC filing, as of December 2012, 3M employed 87,677 people (full-time equivalents) worldwide, 34,746 who whom were employed in the United States. *Chiabotti Decl.* at ¶ 4.  3M's 2012 net sales were $29,904,000,000 and its assets were valued at $33,876,000,000. *Id*.

3M can hardly claim that litigating this case in Delaware will be unduly burdensome.  In fact, this Court has found such an argument from even smaller companies as "implausible." *Intellectual Ventures I*, 797 F.Supp.2d at 481 ("Each of the Defendants is a global corporation, employing at least 1,000 people, and earning annual revenues in excess of $1 billion. On its face, then, Defendants' contention that litigating one patent infringement action in Delaware would "significantly disrupt" their operations strikes the Court as implausible").

In severe contrast, Andover is a small company, employing approximately 250 people and having offices only at two locations on the East Coast:  its headquarters in Massachusetts and another small location in Florida. *Murphy Decl.* at ¶ 2.  And, Andover's 2012 net sales were approximately one tenth of one percent of 3M's sales. *Id*. at ¶ 3.

Knowing that it cannot make a credible argument that litigating in Delaware would somehow pose a unique or unusual burden, 3M attempts to combine this factor with the one below.  Nevertheless, actually addressing this factor reveals that the burden of travel is significantly greater if Andover is forced to litigate at the district court in Duluth, Minnesota.  Traveling to Duluth, Minnesota is burdensome for Andover representatives and its attorneys.

---

[2] *See e.g., MacQueen v. Union Carbide Corporation et. al.*, Case No. 13-cv-00835-SLR-SRF; *Avery Dennison Corporation v. 3M Company, Case No*. 10-cv-00372-GMS (stayed patent infringement action pending reexamination); *Kallhoff et al v. 3M Company et. al.*, Case No. 12-cv-00585-SLR-SRF; *Pragmatus Telecom LLC v. 3M Company*, Case No. 12-cv-01533-RGA (patent infringement).

There are *no* non-stop flights for Andover representatives from Logan International Airport to Duluth International Airport. *Chiabotti Decl.* at ¶ 5. The estimated average duration of a one stop flight from Boston to Duluth is about 5 to 8 hours (depending on the flight, without travel delays). *Id.* There are also *no* non-stop flights for Andover's attorneys from Palm Beach International Airport to Duluth International Airport. *Chiabotti Decl.* at ¶ 6. The estimated average duration of a one stop flight from Palm Beach to Duluth is about eight hours (without travel delays). *Id.*

In contrast to the 5+ hour days traveling to Duluth, travel to Delaware is fast and efficient for Andover and its counsel. A slew of 1-hour, non-stop flights, leaving nearly every half hour or hour, are available from Boston to Philadelphia International Airport, which is a short 22 mile drive from the District of Delaware courthouse. *Chiabotti Decl.* at ¶ 7, 8. Likewise, two daily, 3-hour, non-stop flights from Palm Beach to Philadelphia are available. *Chiabotti Decl.* at ¶ 9.

Notably, the burden is comparatively less for 3M too. There are multiple daily 3-hour, non-stop flights available from Minneapolis–Saint Paul to Philadelphia International Airport. *Chiabotti Decl.* at ¶ 10.

In short, the travel to Delaware is fast and efficient for all parties, but travel to Duluth, Minnesota for both Andover and its counsel require inefficient day-long trips.

3M's decision to skip this factor in its opening brief is telling—convenience of the parties strongly favors Delaware.

### e. Convenience Of Witnesses

3M again mis-analyzes this factor, which addresses "the convenience of the witnesses - ***but only*** to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879 (emphasis added). Although 3M complains that its employees and

personnel are in Minnesota, it fails to assert that a ***single*** witness would ***not*** be available for trial. ***Not even one***. Such broad assertions of "convenience" without demonstrating unavailability for trial are unpersuasive. *See Trustco Bank v. Automated Transactions LLC*, Civ. No. 12-613-SLR at 11 (D. Del., Mar. 27, 2013) ("Trustco does not advance any evidence that allows this court to conclude that its witnesses would not be available for trial in Delaware.") And, the convenience of travel analysis above applies equally here. Since 3M did not carry its burden to demonstrate unavailability, this factors favors denying 3M's motion.

### f. Location Of Books And Records

"[T]he location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)" also favors Delaware. *Jumara,* 55 F.3d at 879. 3M's proforma arguments that all of its relevant records are in Minnesota should fall on deaf ears. 3M acknowledges recent advances in the production of documents do not entitle this factor to much weight. D.I. at 14. But 3M fails to make any argument, much less provide any evidence, that litigating in Delaware would make a single document unavailable. Without even an assertion of unavailability, this factor favors denying the motion.

## 2. Public Interest Factors Favor Denying The Motion

### a. Public policy Weighs Against Transfer

"The public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." *Wacoh Co. v. Kianix Inc.*, 2012 WL 70673, at *6 & n.9 (D. Del. Jan. 9, 2012). 3M is a Delaware corporation. This factor weighs against transfer.

**b.     The Remaining Factors Are Neutral**

The remaining factors, namely, the enforceability of judgment, practical considerations, administrative difficulties, local interests and Judges' familiarity with the law are neutral. Indeed, 3M has conceded some of these factors are non-determinative.

There is no suggestion that a judgment would be unenforceable in Delaware. There are no "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara,* 55 F.3d at 879. And, there is no "relative administrative difficulty in [Delaware] resulting from court congestion." *Jumara,* 55 F.3d at 879. In fact, the District of Delaware is known for being patent savvy. Also, the local interest factor is typically neutral in patent litigation as it is here "because patent issues do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). Thus, none of these remaining factors favor transfer.

**3.     On Balance, The *Jumara* Factors Favor Denying 3M's Motion To Transfer**

Plaintiff's choice of forum weighs heavily against transferring this case out of Delaware. Because 3M failed to provide any compelling factual basis that would be unusual or burdensome enough to favor transfer, the remaining factors—with the sole exception of Defendant's preference—are either neutral or weigh against transfer. Accordingly, Defendant has not met it substantial burden of providing that the *Jumara* factors weigh strongly in favor of transfer. Therefore, this Court should deny the motion.

**Conclusion**

For the foregoing reasons, Andover respectfully requests this Court to deny 3M's motion to transfer.

Dated: August 29, 2013

Respectfully submitted,

CONNOLLY GALLAGHER LLP

By: /s/Arthur G. Connolly, III
    Arthur G. Connolly, III (#2667)
    Ryan P. Newell (#4744)
    Mary I. Akhimien (#5448)
    The Brandywine Building
    1000 West Street
    Wilmington, DE  19801
    (302) 888-6318
    aconnolly@connollygallagher.com
    rnewell@connollygallagher.com
    makhimien@connollygallagher.com

David Brafman, Esq.
Peter A. Chiabotti, Esq.
Akerman Senterfitt
222 Lakeview Avenue, Fourth Floor
West Palm Beach, FL 33401-6147
Phone:  (561) 653-5000
david.brafman@akerman.com
peter.chiabotti@akerman.com

*Attorneys for Plaintiff Andover Healthcare, Inc.*