IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANDOVER HEALTHCARE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-843 (LPS) |
| | ) | |
| 3M COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**3M COMPANY'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STAY
PENDING *INTER PARTES* REVIEW OF THE PATENT-IN-SUIT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
menefiling@mnat.com

*Attorneys for 3M Company*

Michael A. Morin
Mark J. Feldstein
Jeffrey W. Abraham
Casey L. Dwyer
M. David Weingarten
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
901 New York Avenue, N.W.
Washington, DC 20001
(202) 408-4000

April 15, 2014

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS ................................................................................... 1

    A.    These Proceedings Are in the Very Early Stages ...................................1

    B.    3M's Accused Coban[TM] Products ........................................................2

    C.    Inter Partes Review Proceedings (IPRs) ...............................................2

    D.    3M's Petition for IPR ..............................................................................4

III.    ARGUMENT ....................................................................................................... 5

    A.    The Court Has the Authority to Stay the Case to Manage its Docket, to Conserve Resources, and to Further the Interests of Justice....................................5

    B.    All Factors Favor a Stay ..........................................................................6

        1.    3M's IPR Will Eliminate or Simplify Issues for Trial...............6

        2.    The Early Stage of Litigation Favors a Stay ...............................9

        3.    Plaintiff will Suffer No Undue Prejudice and Defendant Will Not Gain Any Clear Tactical Advantage ........................................10

IV.    CONCLUSION................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) (en banc)..........................................................................12, 13

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
  No. 06-514 GMS, 2007 WL 2892707 (D. Del. Sept. 30, 2007)............................................8, 9

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
  No. 05-590 GMS, 2006 WL 2375035 (D. Del. Aug. 16, 2006) ................................................8

*Alloc, Inc. v. Unilin Décor N.V.*,
  No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) ......................................10-11

*Boston Scientific v. Cordis Corp.*,
  777 F. Supp. 2d 783 (D. Del. 2011)......................................................................................10

*Cima Labs, Inc. v. Actavis Group HF*,
  No. 06-1970 (DRD), 2007 U.S. Dist. LEXIS 41516 (D.N.J. June 7, 2007)............................5

*Cooper Notification, Inc. v. Twitter, Inc.*,
  No. 09- 865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ..........................................6, 12

*Cost Bros., Inc. v. Travelers Indem. Co.*,
  760 F.2d 58 (3d Cir. 1985)....................................................................................................5

*Dura Global Techs., LLC v. Magna Intern. Inc.*,
  No. 11-cv-10551-SFC-MKM, 2011 WL 5039883 (E.D. Mich. Oct. 24, 2011) ......................7

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988)..............................................................................................5

*Ever Win Int'l Corp. v. Radioshack Corp.*,
  902 F. Supp. 2d 503 (D. Del. 2012)......................................................................................12

*Everlight Elecs., Col., Ltd. v. Nichia Corp.*,
  No. 12-cv-11758, 2013 WL 1821512 (E.D. Mich., Apr. 30, 2013) ......................................10

*Gioello Enters. Ltd. v. Mattel, Inc.*,
  No. 99-375 GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001)..........................................8, 10

*Hill–Rom Servs. v. Stryker Corp.*,
  No. 1:11–cv–1120-JMS-DKL, 2012 WL 5878087 (S.D. Ind. Nov. 20, 2012) ......................13

*In re Body Science LLC,*
No. 1:12-md-2375-FDS, 2012 WL 5449667 (D. Mass. Nov. 2, 2012) .................................... 7

*Neste Oil OYJ v. Dynamic Fuels, LLC,*
No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013) ...................................... *passim*

*Neste Oil OYJ v. Dynamic Fuels, LLC,*
No. 12-662-GMS, 2013 WL 424754 (D. Del. Jan. 31, 2013) ................................................ 12

*Pragmatus AV, LLC v. Facebook, Inc.,*
No. 11-CV-02168-EJD, 2011 WL 4802958 (N.D. Cal. Oct. 11, 2011) ................................... 6

*Princeton Digital v. Harmonix,*
No. 12-1461-LPS-CJB (D. Del. Jan. 15, 2014) ........................................................... *passim*

*Round Rock Research LLC v. Dole Food Co. Inc.,*
Nos. 11-1239-RGA, 11-1241-RGA, 11-1242-RGA,
2012 WL 1185022 (D. Del. Apr. 6, 2012) .................................................................... 5-6

*Seattle Box Co. v. Indus. Crating and Packing Inc.,*
756 F.2d 1574 (Fed. Cir. 1985) ............................................................................... 3

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.,*
No. SACV 12-21-JST, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) .................................... 6

*Softview LLC v. Apple Inc.,*
No. 12-989-LPS 10-389-LPS, 2013 WL 4757831 (D. Del. Sept. 4, 2013) .................. 3, 4, 6, 7

*St. Clair Intellectual Property Consultants, Inc. v. Acer, Inc.,*
No. 09-354-LPS, 10-282-LPS, 2013 WL 1344730 (D. Del. March 29, 2013)....................... 13

*Textron Innovations Inc. v. Toro Co.,*
No. 05-486-GMS, 2007 WL 7772169 (D. Del. Apr. 25, 2007) ............................................ 8

*Tse v. Apple Inc.,*
No. C 06-06573 SBA, 2007 WL 2904279 (N.D. Cal. Oct. 4, 2007)....................................... 6

*Wall Corp. v. BondDesk Grp., LLC,*
No. 07-844 GMS, 2009 WL 528564 (D. Del. Feb. 24, 2009) ............................................. 11

**FEDERAL STATUTES**

35 U.S.C. § 112 .................................................................................................... 8

35 U.S.C. § 282 .................................................................................................... 13

35 U.S.C. § 286 .................................................................................................... 12

35 U.S.C. §§ 311-319 ............................................................................................. 2

iii

35 U.S.C. § 314(a) ....................................................................................................................3

35 U.S.C. § 314(b) ...............................................................................................................4, 11

35 U.S.C. § 315(e)(2) .........................................................................................................3, 5, 7

35 U.S.C. § 316(a)(6) .............................................................................................................3

35 U.S.C. § 318(c) ..................................................................................................................3

**REGULATIONS**

37 C.F.R. § 42.12 ...................................................................................................................3

37 C.F.R. § 42.100(c) .........................................................................................................3, 11

37 C.F.R. § 42.107(b) .........................................................................................................4, 11

**OTHER AUTHORITIES**

77 Fed. Reg. at 48,680 .........................................................................................................2, 3

77 Fed. Reg. at 48,695 ..............................................................................................................3

## I.      INTRODUCTION

Defendant 3M Company ("3M") submits this brief in support of its Motion to Stay Pending *Inter Partes* Review ("IPR") of the patent-in-suit.   A stay is appropriate because: (1) the IPR will eliminate or, at the very least, simplify the issues for trial, as all relevant claims will likely be cancelled or materially amended; (2) this action is in the early stages of litigation; and (3) Andover will suffer no undue prejudice from a stay.

Review of the patent-in-suit, United States Patent No. 6,156,424 ("the '424 patent"), is exceedingly likely to be instituted given the overwhelmingly high percentage of petitions granted.   Once the IPR is instituted, the IPR will likely be concluded within one year.   This case has yet to begin in earnest—the Rule 16 scheduling conference has not occurred and initial disclosures have not been exchanged.   Granting a stay now will eliminate or, at the very least, significantly narrow the issues in this case, conserving the Court's and the parties' resources. Furthermore, Andover will not be unduly prejudiced by a stay, as it waited nearly *fourteen years* before filing this lawsuit, despite knowing about 3M's alleged infringing products all along. Because all factors favor a stay, 3M requests that the Court stay this litigation pending the outcome of 3M's IPR.

## II.      STATEMENT OF FACTS

### A.      These Proceedings Are in the Very Early Stages

Andover filed its original Complaint on May 14, 2013, accusing 3M of infringing the '424 patent.   (D.I. 1.)   On July 5, 2013, Andover filed its First Amended Complaint.   (D.I. 9.) The Amended Complaint is nearly identical to the original complaint, except that Andover limited its requested monetary relief to damages incurred since June 3, 2010.   (*Id.*)   3M filed its Answer to the First Amended Complaint on July 29, 2013.   (D.I. 10.)   The following day, 3M

1

filed its motion to transfer venue and supporting papers.  (D.I. 11-14.)  On March 31, 2014, this Court held a hearing to address the motion to transfer, at which it denied 3M's motion.  (D.I. 26.)

This case is in its earliest procedural stage.  Discovery is just beginning, and no trial date has been set.  There is no scheduling order in place, the Rule 26(a)(1) initial disclosures have not been exchanged, and the Rule 16 scheduling conference has not yet been conducted.  The Defendant filed this motion 15 days after the Court's denial of 3M's motion to transfer and the same day as requesting *Inter Partes* Review ("IPR") of the '424 patent.

### B. 3M's Accused Coban™ Products

3M's Accused Products are compression bandages sold under the brand name Coban™. These products are used to deliver comfortable, therapeutic compression for treating conditions such as venous leg ulcers and for holding dressings in place over wounds.  3M began selling its latex-free Coban™ products in 1999.  There is no question that Andover has been aware of 3M's latex-free Coban™ products since that time, given that the parties' products competed with one another in the marketplace.  Given that Andover's patent-in-suit issued in December 2000, the inescapable conclusion is that *Andover voluntarily waited nearly fourteen years before instituting the present suit.*

### C. Inter Partes Review Proceedings (IPRs)

On September 16, 2011, Congress enacted the Leahy-Smith America Invents Act ("AIA") "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs."  77 Fed. Reg. 48,680 at 48,680 (Aug. 14, 2012).  IPR is a new administrative proceeding created by the AIA.  Pub. Law. No. 112-29, 125 Stat. 284 (codified as amended in scattered sections of 35 U.S.C. (2011)).  With it, Congress armed the PTO with a fast and efficient mechanism to reconsider the validity of previously issued patents.  35 U.S.C. §§ 311-319.  An IPR is appropriate if the PTO determines

that "there is a reasonable likelihood that the petitioner [will] prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a).

The PTO rules comport with the statute's goal—to "create a timely, cost-effective alternative to litigation." 77 Fed. Reg. at 48,680. The IPR process is simple, streamlined, and on a controlled timeline. IPR proceedings are statutorily mandated to last "normally no more than one year . . . [which] can be extended by up to six months for good cause." 37 C.F.R. § 42.100(c). But such "[e]xtensions of the one-year period are anticipated to be rare." 77 Fed. Reg. at 48,695. Indeed, the AIA requires the PTO to implement regulations prescribing sanctions for dilatory tactics in the conduct of IPR proceedings. 35 U.S.C. § 316(a)(6); 37 C.F.R. § 42.12.

The new IPR proceedings will necessarily limit the issues that the district court will face because, once the Patent Trial and Appeals Board ("PTAB") issues its final decision, the petitioner is estopped from asserting invalidity in a civil action "on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). Further, the patent owner is subject to intervening rights as to any claims that were amended during the IPR. 35 U.S.C. § 318(c). That is, the patent owner would not be allowed to recover damages based on infringement of a claim that was amended during the IPR. *See, e.g.*, *Seattle Box Co. v. Indus. Crating and Packing Inc.*, 756 F.2d 1574, 1579 (Fed. Cir. 1985) (interpreting 35 U.S.C. § 252, which is the intervening rights provision referenced in 35 U.S.C. § 318(c) related to IPR).

While this Court has long granted stays pending reexamination by the PTO, it has recently acknowledged that granting stays in favor of the new IPR proceeding makes even more sense. *See Softview LLC v. Apple Inc.*, C.A. No. 12-989-LPS 10-389-LPS, 2013 WL 4757831, at

*2 (D. Del. Sept. 4, 2013) (granting stay in view of newly filed IPR).  With the guaranteed resolution of most cases within one year of institution, "*inter partes* review promises to be a more expeditious process than reexamination."  *Id.* at *1.

### D.     3M's Petition for IPR

As 3M advised it was planning to do during the oral hearing on 3M's transfer motion, 3M filed a petition for IPR of the '424 patent with the United States Patent and Trademark Office on April 15, 2014.  *See* Ex. 1, Petition For *Inter Partes* Review of U.S. Patent No. 6,156,424.[1]  3M identified several highly-relevant prior-art references the PTO had not considered, and identified six grounds for invalidating the claims of the '424 patent.  *Id.* at 4-6, 23-56.  Plaintiff may file a response to 3M's petition within three months (37 C.F.R. § 42.107(b)), and the PTO will then rule on whether to institute the IPR within three months of Plaintiff's response.  *See* 35 U.S.C. § 314(b).  The PTO grants such requests more than 80% of the time.[2]

Recent statistics indicate that the PTO has cancelled over 90% of the claims it has addressed in IPRs (i.e., less than 10% of claims survive IPR).[3]  In the event that all of Andover's asserted claims are invalidated in the IPR, as 3M anticipates, then there will be nothing left for this Court to do.  But even if that does not happen, there will still be a significant narrowing of the issues.  After all, if the claims are amended, then damages may be eliminated or greatly

---

[1] "Ex." refers to the exhibits attached to the Declaration of M. David Weingarten, filed contemporaneously herewith.

[2] As of April 10, 2014, the PTO had issued decisions on 527 petitions and only denied instituting *inter partes* review in 92 of those cases.  *See* Ex. 2, PTAB AIA Progress Statistics, dated April 10, 2014, http://www.uspto.gov/ip/boards/bpai/stats/aia_statistics_04_10_2014.pdf, last accessed April 15, 2014.

[3] Based on statistics published at http://www.uspto.gov and analysis of published IPR opinions.  S*ee* Ex. 3, P. Andrew Riley, Jonathan R.K. Stroud, & Jeffrey Totten, *The Surprising Breadth of Post-Grant Review for Covered Business Method Patents: A New Way to Challenge Patent Claims*, 15 Colum. Sci. & Tech. L. Rev. 235, n.196 (2014) (For IPR, 310 out of 338 claims have been found unpatentable in the Board's final written decision).

4

reduced, or Andover may need to drop some or all of its infringement contentions. Plus, if 3M loses, it will be estopped in this Court from raising not only the issues that it actually raised in the IPR, but all of the issues that it reasonably could have raised, greatly simplifying the proceedings. 35 U.S.C. § 315(e)(2).

## III.   ARGUMENT

### A.   The Court Has the Authority to Stay the Case to Manage its Docket, to Conserve Resources, and to Further the Interests of Justice

District courts have broad discretion to stay judicial proceedings pending IPR's. *See* Ex. 4, Memorandum Order Granting Motion to Stay (D.I. 70), *Princeton Digital v. Harmonix*, 12-1461-LPS-CJB (D. Del. Jan. 15, 2014)*; Neste Oil OYJ v. Dynamic Fuels, LLC,* No. 12-1744-GMS, 2013 WL 3353984, at *1 (D. Del. July 2, 2013)*; see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (citations omitted); *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). In exercising this discretion, courts have recognized that there is a "liberal policy in favor of granting motions to stay proceedings," especially in cases that are still in the initial stages of litigation or where there has been little or no discovery. *Cima Labs, Inc. v. Actavis Group HF*, No. 06-1970 (DRD), 2007 U.S. Dist. LEXIS 41516, at *25, *30-31 (D.N.J. June 7, 2007) (citation omitted).

This Court has typically considered three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage. *See, e.g.*, *Harmonix*, 12-1461-LPS-CJB at 4*; see also Round*

*Rock Research LLC v. Dole Food Co. Inc*., Nos. 11-1239-RGA, 11-1241-RGA, 11-1242-RGA, 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012); *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09- 865-LPS, 2010 WL 5149351, at *1 (D. Del. Dec. 13, 2010).

In evaluating these factors, this Court has granted stays pending IPR even though the PTO had not yet decided whether to grant the defendant's petition.  *Neste Oil,* 2013 WL 3353984, at *1.  Other district courts have followed similar reasoning, which is consistent with how courts often treated motions to stay pending reexamination, a predecessor to IPR.  *See, e.g.*, *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. SACV 12-21-JST, 2012 WL 7170593, at *3-4 (C.D. Cal. Dec. 19, 2012) (granting stay pending PTO's decision on petition for IPR and noting "if the USPTO rejects the *inter partes* request, the stay will be relatively short"); *see also Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-CV-02168-EJD, 2011 WL 4802958, at *3 (N.D. Cal. Oct. 11, 2011) ("[I]t is not uncommon for this court to grant stays pending reexamination prior to the PTO deciding to reexamine the patent."); *Tse v. Apple Inc.*, No. C 06-06573 SBA, 2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007) ("In light of the 'liberal policy' favoring stays pending reexamination, a court can grant a stay even if the Patent Office is still considering whether to grant a party's reexamination request.").

**B.     All Factors Favor a Stay**

**1.     3M's IPR Will Eliminate or Simplify Issues for Trial**

Andover has yet to identify which claims it is asserting in this case.  In its First Amended Complaint, Andover simply contends that 3M is infringing "one or more claims of the '424 patent."  (D.I. 9 at ¶ 9.)  The '424 patent, however, only has 6 claims, and 3M has petitioned for PTO review of all of them.  Accordingly, if the '424 patent claims are found invalid, there would be no need for further proceedings in this case. *See, e.g.*, *Softview*, 2013 WL 4757831, at * 1 (noting that in a situation where all of the asserted claims are found invalid by the PTO, the

"litigation would be simplified because it would be concluded.") (internal quotation marks omitted).

Alternatively, if the PTAB does not find all claims invalid, a finding that even a single asserted claim is invalid would still "reduce the number of issues left to be litigated." *Id.*; *see Harmonix*, 12-1461-LPS-CJB at 4-5. Even in this situation, a stay makes sense rather than risk devoting judicial resources and the parties' resources addressing infringement or the validity of patent claims that could ultimately be cancelled by the PTO. *See In re Body Science LLC*, No. 1:12-md-2375-FDS, 2012 WL 5449667, at *5 (D. Mass. Nov. 2, 2012) (citing *Dura Global Techs., LLC v. Magna Intern. Inc.*, No. 11-cv-10551-SFC-MKM, 2011 WL 5039883, at *5 (E.D. Mich. Oct. 24, 2011)).

Additionally, even if the claims are not cancelled, their scope may change whether through amendment or based on Andover's arguments during the IPR, so the *inter partes* review proceeding could significantly simplify issues for trial. In this regard, a stay could conserve judicial resources by avoiding litigation altogether on invalid claims that had to be amended. Moreover, to secure allowance of the challenged claims, Andover may make arguments or take positions that are inconsistent with its infringement contentions. In that case, Andover may be estopped from asserting infringement. This, too, raises another potential way to conserve judicial resources by limiting the issues at trial.

In the unlikely event that none of the '424 claims are cancelled or amended, the Court would still benefit from staying the case. The IPR will further simplify the issues due to both the estoppel effect that the IPR proceeding would have as well as due to insight that the Court could gain from the PTO's review process. *Softview*, 2013 WL 4757831, at * 1*; see also* 35 U.S.C. § 315(e)(2) (noting that if the PTO grants a petition for IPR, the petitioner is estopped from

asserting invalidity in a civil action on "any ground that the petitioner raised or reasonably could have raised during that inter partes review"); *Abbott Diabetes Care, Inc. v. DexCom, Inc*., No. 06-514 GMS, 2007 WL 2892707, at *5 (D. Del. Sept. 30, 2007). In addition this Court has recognized several advantages to stays pending PTO review:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further involvement of the court, (5) the record of reexamination would probably be entered at trial, reducing the complexity and length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pretrial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Neste Oil*, 2013 WL 3353984, at *4 (quoting *Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99-375 GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001)).

In contrast, permitting this action to go forward while *inter partes* review is pending would not only relinquish the efficiencies described above, but would also create a substantial risk of multiple, inconsistent rulings and of this Court issuing advisory opinions. *See Textron Innovations Inc. v. Toro Co.*, No. 05-486-GMS, 2007 WL 7772169, at *3 (D. Del. Apr. 25, 2007) ("[N]ot staying the proceedings runs the risk of inconsistent adjudications or the issuance of advisory opinions."); *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 05-590 GMS, 2006 WL 2375035, at *6 (D. Del. Aug. 16, 2006) (staying case pending reexamination to "conserve the resources of the parties and the court, thereby promoting efficiency").

Furthermore, although 3M did assert affirmative defenses under 35 U.S.C. § 112, which are beyond the Section 102 and 103 defenses likely to be addressed in the IPR proceeding (*see* D.I. 10 at 5), "the relatively early stage of this case has not allowed for great clarity as to whether such other defenses will be seriously pressed in this case." *Harmonix*, 12-1461-LPS-CJB at 7.

Therefore, while there may not be "total overlap" between the instant litigation and the IPR proceeding, the fact that there are only allegations of patent infringement at issue here demonstrates that "the amount of any divergence . . . does not, at this point, seem large." *Id.* Under these circumstances, this Court has determined this factor weighs slightly in favor of a stay.

Although the PTO has not yet determined whether to institute 3M's IPR, from a statistical perspective, the probability of a grant of review is very high. As of April 10, 2014, the PTO had issued decisions on 527 petitions and only denied instituting *inter partes* review in 92 of those cases, a success rate in excess of 80%. *See* PTAB AIA Progress Statistics dated April 14, 2014. Further, statistical data shows that of the IPR's instituted, the PTO has cancelled over 90% of the claims it has addressed. *See* Ex. 3 at 271 n. 196 (indicating less than 10% of claims survive IPR).

### 2.    The Early Stage of Litigation Favors a Stay

The present case is in its earliest stages. The Court only recently resolved 3M's motion to transfer and no Rule 16 conference has been scheduled. As a result, there is no Scheduling Order in this case, and no trial date has been set. Further, the parties are just beginning to exchange discovery requests and plaintiff has not provided any claim charts or product analysis regarding its infringement theory. Under these circumstances, courts often grant motions to stay litigation. *See Abbott Diabetes Care, Inc.*, 2007 WL 2892707, at *5 (staying litigation where no Rule 16 scheduling conference or discovery had occurred and no scheduling order had been entered). In *Harmonix*, this Court granted a stay under similar circumstances, noting that "[g]ranting such a stay early in a case can be said to advance judicial efficiency and 'maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid

claims.'" *Harmonix*, 12-1461-LPS-CJB at 7 (quoting *Gioello*, 2001 WL 125340, at *2). Because this case is in its infancy, this factor, too, weighs in favor of a stay.

### 3.    Plaintiff will Suffer No Undue Prejudice and Defendant Will Not Gain Any Clear Tactical Advantage

In determining whether a Plaintiff would suffer undue prejudice, Courts consider a number of sub-factors, including (1) the timing of the request for review, (2) the timing of request for stay, (3) the status of the review proceeding, and (4) the relationship of the parties. *Neste Oil,* 2013 WL 3353984, at*2-4*; Boston Scientific v. Cordis Corp.*, 777 F. Supp. 2d 783, 789-90 (D. Del. 2011). Each of these factors strongly weighs in favor of a stay.

### a.    The Timing of the Request for Review and Request For Stay

The timing of these requests suggests no undue prejudice to Andover. 3M filed the petition for IPR on April 15, 2014, less than a year after Andover filed its initial Complaint, and approximately nine months after Andover filed its Amended Complaint. Moreover, 3M is moving to stay this litigation immediately after filing its IPR petition. Neither Andover nor 3M has invested substantial resources in this litigation. Discovery requests are just starting to go out, and no trial date has been set. There is no scheduling order in place, the Rule 16 scheduling conference has not yet been conducted, and the initial disclosures required by this Court have not yet occurred.

Moreover, the timing of these filings does not suggest that 3M is seeking any inappropriate tactical advantage. *See, e.g.*, *Everlight Elecs., Col., Ltd. v. Nichia Corp.*, No. 12-cv-11758, 2013 WL 1821512, *7-8 (E.D. Mich., Apr. 30, 2013) (defendant had counterclaimed, asserting infringement of its own patents, as well as petitioned for review of the plaintiff's patent). Indeed, as noted above, both parties and the Court would conserve resources by participating in the IPR proceedings. *See Alloc, Inc. v. Unilin Décor N.V.*, C.A. No. 03-253-

10

GMS, 2003 WL 21640372, at *2 (D. Del. July 11, 2003) (staying case because "refinement of the issues" during reexamination "will benefit both parties by reducing litigation costs").

> **b.      The Status of the Review Proceeding**

As noted above, the PTO has not yet determined whether or not to institute the 3M's IPR, but it is statutorily required to do so within 6 months.  *See* 35 U.S.C. § 314(b); 37 C.F.R. § 42.107(b); *see also Neste Oil,* 2013 WL 3353984, at *2 n. 2.  If trial is instituted, the PTAB must then issue a final written decision regarding the patentability of the claims within one year, absent good cause for delay.  *See* 37 C.F.R. § 42.100(c). Thus, the PTAB will issue a final decision between about 12 and 18 months from the filing of the petition, which is faster than the average time to trial for civil cases in Delaware.  If the PTAB decides not to institute the IPR, the stay would last only six months.

Thus, the IPR procedure is far faster than the prior reexamination process.  But even under that older, slower, procedure, this Court held that delay "does not, by itself, amount to undue prejudice."  *Wall Corp. v. BondDesk Grp., LLC*, No. 07-844 GMS, 2009 WL 528564, at *2 (D. Del. Feb. 24, 2009) (granting stay even while recognizing that the previous *inter partes* reexamination proceedings took on average three years). The speediness of the IPR process minimizes the impact of any delay caused by the PTO proceeding.

Moreover, even if the Court were otherwise reluctant to issue a stay before actual institution of the IPR, this would be the ideal case for doing so.  As discussed above, the decision to institute the IPR will be made within six months, and likely sooner.  Compared to the nearly fourteen years Andover voluntarily delayed before filing this lawsuit (see discussion below), this would be a negligible period of additional delay, and well worth it, given the significant likelihood that the IPR will be case-dispositive.

### c.      Relationship of the Parties

Courts also consider the relationship of the parties in assessing potential prejudice to the non-movant, which typically involves considering whether the parties are direct competitors. *See, e.g.*, *Cooper Notification,* 2010 WL 5149351, at *5. This Court has recognized, however, that "[t]here may be less cause for concern . . . when there are a number of active firms in the relevant market." *Neste Oil OYJ v. Dynamic Fuels, LLC,* No. 12-662-GMS, 2013 WL 424754, at *3 (D. Del. Jan. 31, 2013). Here, although 3M and Andover both contend to sell therapeutic compression products, there are multiple, active competitors in the market. For example, companies such as Urgo and Smith & Nephew offer competing compression bandages as do other foreign firms. Therefore, any claim of undue prejudice is undermined.

Courts also have considered whether a plaintiff sought a preliminary injunction in assessing this factor. *Neste Oil*, 2013 WL 3353984, at *4 (citing *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 511 (D. Del. 2012) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."). Here, not only did Andover fail to move for a preliminary injunction, but waited nearly fourteen years to file the present lawsuit.

While all of the other factors also clearly favor a stay, this fact alone is nearly dispositive here. After all, it is relatively rare to see a party wait even a few years to sue a competitor for patent infringement. That explains why, for example, there is a presumption of laches after just six years of inaction.[4] But here, 3M released its latex-free Coban[TM] products nearly fifteen years

---

[4] In the event that the stay is denied or the case ultimately moves forward, Andover's nearly 14-year delay—more than *double* the six-year presumption of laches—should bar it from seeking any pre-suit damages. *See* 35 U.S.C. § 286; *see also A.C. Aukerman Co. v. R.L. Chaides*
(continued…)

ago, and Andover's patent issued nearly fourteen years ago.  If time were truly of the essence, Andover would have sued 3M well over a decade ago.  *See, e.g.*, *Hill–Rom Servs. v. Stryker Corp.*, No. 1:11–cv–1120-JMS-DKL, 2012 WL 5878087, *6 (S.D. Ind. Nov. 20, 2012) (denying patentee's argument of prejudice based on the parties' status as direct competitors because it waited nearly six years to bring its infringement action).  After taking no action for nearly fourteen years, Andover cannot possibly claim any undue prejudice from a stay that will last no more than a year and a half, and is likely to eliminate most, if not all, of the issues in the case.

## IV.    CONCLUSION

For the foregoing reasons, 3M respectfully requests that the Court grant this Motion and issue an order staying this litigation pending the outcome of the *inter partes* review of the '424 patent.

---

(…continued)
*Const. Co.*, 960 F.2d 1020, 1028–29 (Fed. Cir. 1992) (en banc); *St. Clair Intellectual Property Consultants, Inc. v. Acer, Inc.*, No. 09-354-LPS, 10-282-LPS, 2013 WL 1344730, at *1 (D. Del. March 29, 2013).  Moreover, Andover's entire suit should be barred, due to, *inter alia,* a combination of Andover's excessive delay and its silence regarding 3M's alleged infringement during the parties' 2010 settlement discussions.  *See* 35 U.S.C. § 282; *see also A.C. Aukerman*, 960 F.2d at 1041–43.  These facts further demonstrate that Andover will suffer no undue prejudice from a stay.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

OF COUNSEL:

Michael A. Morin
Mark J. Feldstein
Jeffrey W. Abraham
Casey L. Dwyer
M. David Weingarten
FINNEGAN, HENDERSON, FARABOW,
GARRETT, & DUNNER, LLP
901 New York Avenue, N.W.
Washington, DC 20001
(202) 408-4000

*Attorneys for Defendant*

April 15, 2014

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 15, 2014, upon the following in the manner indicated:

Arthur G. Connolly, III, Esquire                                    *VIA ELECTRONIC MAIL*
Ryan P. Newell, Esquire
Mary I. Akhimien, Esquire
CONNOLLY GALLAGHER LLP
The Brandywine Building
1000 West Street
Wilmington, DE  19801
*Attorneys for Andover Healthcare Inc.*

David Brafman, Esquire                                              *VIA ELECTRONIC MAIL*
Peter A. Chiabotti, Esquire
AKERMAN SENTERFITT
222 Lakeview Avenue, Fourth Floor
West Palm Beach, FL 33401
*Attorneys for Andover Healthcare Inc.*

*/s/ Maryellen Noreika*
_____
Maryellen Noreika (#3208)

1