

Fish & Richardson P.C.
222 Delaware Avenue
Wilmington, DE 19801
302-652-5070

December 17, 2015

PUBLIC VERSION

The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street, Unit 26, Room 6124
Wilmington, DE 19801-3556

**Douglas E. McCann**
dmccann@fr.com
302 778 8437 direct

Re:   *Andover Healthcare Inc. v. 3M Company*, No. 13-843 (LPS) (D. Del.)

## I.   INTRODUCTION

Andover has now served three untimely "supplemental" expert reports, without seeking leave to do so, and without good cause. Indeed, one of Andover's most recent "supplemental" reports contains extensive new testing, all of which appears to have been conducted after all the expert deadlines had passed. Andover's excuse for not complying with the Court's deadlines was that its experts were "too busy" to do the work on time, an excuse which simply does not pass muster. Making matters worse, Andover's most recent reply infringement report includes a completely new type of testing not disclosed in Andover's opening report by a new expert appearing for the first time in Andover's reply. This sandbagging distorts the order of proof contemplated by the Scheduling Order, resulting in undue prejudice to 3M.

Simply put, Andover acts as if the rules do not apply to it, and has repeatedly demonstrated this in expert discovery. Andover's conduct is prejudicial to 3M and should not be permitted.

## II.   BACKGROUND

### A.   The Parties Serve Opening And Rebuttal Reports On Crystallinity.

One of the disputes in this case is whether 3M's accused products are crystalline. On September 11, 2015, Andover served Dr. Bryan Coughlin's opening infringement report, in which he asserted that 3M's accused products are crystalline. (Ex. 1.) Dr. Coughlin based this conclusion on a test method called infrared spectroscopy ("IR"). While there are other methods for assessing crystallinity, Dr. Coughlin chose not rely on them and Andover did not serve any other opening infringement report.

On October 30,[1] 3M served noninfringement reports from two experts who opined that 3M's accused products are not crystalline: Dr. Haskell Beckham and Dr. David Bucknall. (Exs. 2-3.) Dr. Beckham opined that the IR method Dr. Coughlin used is not a generally accepted method for measuring crystallinity because it does not directly measure physical characteristics and requires careful calibration that Dr. Coughlin did not do. Dr. Beckham further relied on a test method known as differential scanning calorimetry ("DSC"), which directly measures physical structure by heating the composition and analyzing the presence of melting peaks. Dr. Bucknall relied principally on a

---

[1] This deadline reflects 3M's agreement to a proposed extension by Andover. (Ex. 4).



test method known as x-ray diffraction, which also directly measures a composition's physical characteristics through use of x-rays.

### B. Andover Serves Its First Untimely Report A Week After Its Expert Signed It.

On November 17, over two weeks after the Court's deadline and without warning, Andover served the supplemental report of Mr. Thomas Murphy.[2] (Ex. 5.) Oddly, Mr. Murphy signed this report five days before Andover served it on 3M. (*Id.*) Andover never explained why Mr. Murphy did not timely serve a complete report, nor why it waited so long to serve the supplemental report.

### C. Andover Serves An Improper Reply Report.

On December 4, Andover served two reply reports on infringement: one from Dr. Coughlin and one from Dr. Michael Mackay, a new expert who did not submit an opening report. Dr. Mackay's report dedicates just three paragraphs to addressing the non-infringement analysis conducted by 3M's experts. (Ex. 6.) The remainder of Dr. Mackay's 30-page report is dedicated to a new testing method that Andover did not disclose with Dr. Coughlin's opening infringement report, and that was not addressed by either of 3M's experts in their rebuttal reports.

### D. Andover Serves Two More Untimely Expert Reports.

On December 3, the day before the deadline, Andover requested a one-week extension to serve reply reports. (Ex. 7.) Andover's only explanation for this request was that its experts needed more time. Because of the lack of justification for Andover's last-minute request and the already-extended period for expert discovery, 3M did not agree to the proposal. (*Id.*) Rather than seeking leave from the Court, Andover again engaged in self-help and informed 3M that, despite the deadline, it would be serving more expert reports on December 11. (*Id.*) When December 11 came, Andover did not serve its reports, but instead granted itself yet another extension. (Ex. 8.) On December 16, nearly two weeks after the December 4 deadline, Andover served an additional "supplemental" report from Dr. Mackay. (Ex. 9.) The next day, Andover served yet another "supplemental" report—this one designed to cure spoliation by recreating evidence Mr. Murphy destroyed. (Exs. 10-11.)

### III. THE COURT SHOULD STRIKE ANDOVER'S IMPROPER REPORTS

Andover is not playing by the rules and it is prejudicing 3M. Having now served four improper reports, it is clear that Andover is not only ignoring the rules, but acts as if it is above the Court's Scheduling Order and can disregard it without consequence. The Court should not permit this dismissive treatment of the Scheduling Order and should strike the improper expert reports.

### A. Andover's Untimely Expert Reports Should Be Struck.

Andover's conduct is highly prejudicial to 3M. By waiting until after 3M served its expert reports, Andover was able to analyze the full scope of 3M's reports and account for that analysis in its various untimely reports. This results in an unfair information disparity: by serving its reports after 3M, in violation of the Scheduling Order, Andover and its experts were able to unfairly operate with more information than 3M. The Court should not allow this.

---

[2] This report was purportedly a supplement to Mr. Murphy's October 30 report on validity.



The Court should also strike the reports because Andover's repeated disregard for the Scheduling Order demonstrates bad faith. Andover acts as if the Court's Scheduling Order means nothing. That is not the case. Scheduling orders are put in place to facilitate the fair and orderly progression of discovery; where a party engages in a pattern of disregard, exclusion is necessary to give those orders meaning. *Paxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005). Failure to obey a scheduling order is sanctionable under Rule 37 and, because Andover has offered no justification for its conduct, the Court should impose that sanction here. Fed. R. Civ. P. 37(c)(1).

### B. The Court Should Strike Dr. Mackay's Report As An Improper Reply.

The Court should also strike Dr. Mackay's report because it is not a proper reply, but rather an affirmative report that Andover was required to serve three months ago. The purpose of reply reports, like reply briefs, is to facilitate a narrowing of the parties' disputes and permit parties to directly address issues raised in rebuttal reports. *Oracle v. Google*, 2011 WL 5572835, at *2-3 (N.D. Cal. 2011). The purpose of reply reports is ***not*** to allow a party to raise new issues through new experts that should have been disclosed in opening reports; it is not a license for a party to sandbag their "best points" and get the last word. *In re High-Tech Employee Antitrust Litig.*, 2014 WL 1351040, at *12 (N.D. Cal. 2014) ("Plaintiffs will not be allowed to 'sandbag' Defendants with new analysis that should have been included [in an] opening merits report."); *Oracle*, 2011 WL 5572835, at *2 ("The issue presented is ***whether a new expert who did not serve any opening report may nonetheless make a reply submission . . . the answer is no***."). Yet that is precisely what Andover is trying do. Although Dr. Mackay purports to address 3M's rebuttal reports, he spends just three paragraphs doing that. (Ex. 6.) Nearly all of Dr. Mackay's report is about a new test method that none of the experts previously addressed, which Andover could have included in opening reports.

Andover's late disclosure is highly prejudicial to 3M. In response to Dr. Coughlin's opening infringement report, 3M devised a rebuttal strategy involving tests on over a dozen product components by multiple experts, and numerous critiques of Dr. Coughlin's methodology. That strategy was carefully tailored based on Dr. Coughlin's opening infringement report, and would have been significantly altered had Andover submitted Dr. Mackay's report as an opening report. By sandbagging Dr. Mackay's reply, Andover has effectively reversed the order of proofs, forcing 3M to show its hand first in order to gain an unfair strategic advantage. This kind of prejudice is a bell that cannot be un-rung through additional reports or sur-replies; it can only be cured by striking the improper report.[3] *Oracle*, 2011 WL 5572835, at *4 (striking an improper reply after finding that such practice is "inherently unfair and frustrates important case-management objectives).

For the forgoing reasons, 3M respectfully requests that the Court strike Andover's improper reports.

Respectfully,

*/s/ Douglas E. McCann*

Douglas E. McCann

---

[3] At a minimum, 3M respectfully requests leave to serve a sur-reply.