IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANDOVER HEALTHCARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> 3M COMPANY, <br><br> Defendant. | Civil Action No. 13-843-LPS |

MEMORANDUM ORDER

At Wilmington this **27th** day of **October, 2016**:

Having reviewed the proposed pretrial order (D.I. 315), **IT IS HEREBY ORDERED** that:

1. To allow the Court to properly allocate between the parties trial time used on playing or reading deposition testimony, the parties shall provide the Court's Deputy with a percentage, proportional allocation (e.g., "50% to Plaintiff, 50% to Defendant"). The Court will apply these percentages to the total amount of time it takes for the parties to introduce and present the deposition testimony of the particular witness. The parties should not provide the Court with time allocations (e.g., "charge Plaintiff 5 minutes and charge Defendant 5 minutes"), as invariably it takes longer for the parties to present the witness' testimony than the parties anticipate.

2. The parties' request for a total of 41 hours for their trial presentation is **DENIED**. Considering that this is a one patent case, with two asserted claims, four accused products, a

1

single plaintiff and single defendant, at most five invalidity defenses (written description, enablement, indefiniteness, anticipation, obviousness), damages, and willfulness, and given the number of witnesses the parties intend to call, the Court has determined that the parties will be allocated a maximum of 14 to 16 hours per side for their trial presentations, with the final amount to be determined after further discussion at the pretrial conference.

3. The Court has not completed its consideration of 3M's motion to bifurcate the damages/willfulness issues from the liability issues, but is contemplating granting it. The parties should be prepared to argue the motion at the pretrial conference. As part of the Court's consideration, the parties should be prepared to provide input on how many of the total hours the Court allocates for their overall trial presentations should be allocated to what would be (if needed) the second phase, damages/willfulness portion of the trial. This information will be necessary should the Court decide to grant the motion.

4. As previously ordered (*see* D.I. 311), jury selection will be held on November 10 beginning at 9:30 a.m, with the parties to be present 30 minutes prior. Trial will be held on some or all of the following days and times, as needed, and subject to the time allocations the Court will finalize after further discussion at the pretrial conference:

    a. Monday, November 14 through Thursday, November 17: 8.30 a.m. to 5:00 p.m.

    b. Monday, November 21: 8:30 a.m. to 4:00 p.m.

    c. Tuesday, November 22: 9:00 a.m. to 4:00 p.m.

    d. Wednesday, November 23: 8:30 a.m. to 3:00 p.m.

5. There will be no trial on Friday, November 18.

6.  Andover's motion *in limine* ("MIL") #1, to exclude any evidence regarding the two previous lawsuits between the parties, is **GRANTED**, provided, however, that 3M will be permitted to introduce this evidence should Andover open the door to it. The Court agrees with the parties that the previous trademark and patent infringement suits brought by 3M against Andover, both of which were settled relatively quickly, are not particularly probative of any issue that will be submitted to the jury.

7.  Andover's MIL #2, to exclude testimony of 3M's fact witnesses regarding infringement, is **GRANTED**, however 3M's witnesses will be permitted (as both parties agree it should be permitted) to testify about its technical design decisions. That is, 3M will be permitted to explain how it intended to develop, and believes it succeeded in developing, a product without crystallinity, and did so for performance reasons. 3M's witnesses will not be permitted to testify that they developed their product to have no crystallinity also, at least in part, to avoid infringement, as this would impermissibly permit 3M to use privilege (which 3M repeatedly asserted in its Rule 30(b)(6) deposition) as both a sword and shield.

8.  Andover's MIL #3, to exclude any evidence regarding the foreign litigation or prosecution of the counterpart patent to the patent-in-suit, is **GRANTED**. Whatever minimal probative value there may be in using the German expert's opinion to cross-examine Plaintiff's infringement expert would be far outweighed by the risk of jury confusion, unfair prejudice to Plaintiff, and delay. Reducing the prejudice to 3M from this ruling is the fact that 3M still has "a series of examples [purportedly] showing that [Plaintiff's expert] disregarded evidence and facts that did not suit his story of infringement." (D.I. 315-7 at p. 27 of 36)

9.  3M's MIL #1, to exclude reference to the PTAB's decision not to institute an IPR

3

of the patent-in-suit in response to 3M's petition (filed during the pendency of this case) is **GRANTED**. The PTAB's decision is not a final decision on validity, is based on different legal standards, and has no estoppel effect. The Rule 403 balance strongly favors exclusion, as the minimal (if any) probative value of the PTAB's decision is far outweighed by the risk of jury confusion and unfair prejudice to 3M. The Court will reevaluate its granting of 3M's motion should 3M argue or attempt to prove that the PTO has never considered the Carl prior art, which 3M asserts as invalidating prior art and which was also prior art on which its (rejected) IPR petition was based.

10. 3M's MIL #2, to exclude testimony regarding the parties' previous disputes and alleged actions by 3M, is **GRANTED**, except that the Court largely agrees with Andover's "Very Significant Exception." (D.I. 316-4 at p. 19 of 23) That is, "if 3M brings in evidence, discusses, argues or even intimates about Andover's delay in filing the lawsuit," the Court will either instruct the jury that such "delay" is entirely irrelevant to all issues that the jury must decide, or alternatively will permit Andover "to bring into evidence the three above events [i.e., 3M's 2010 lawsuits against Andover, 3M's 1997 lawsuit against LePage's, and 3M's interactions with Andover's customers] to explain why it waited." (*Id.*)

11. 3M's MIL #3, to exclude Mr. Murphy from testifying about technical facts outside his expert reports, is **DENIED**. 3M is essentially and belatedly objecting to Mr. Murphy testifying under Rule 26(a)(2)(C) as both a fact and expert witness. 3M could have moved to exclude Mr. Murphy's expert testimony on the bases it now asserts but did not do so (instead trying, and failing, to exclude Mr. Murphy on the basis of his financial interest, *see* D.I. 218). 3M has not shown that Mr. Murphy's summary is insufficient. *See* Fed. R. Civ. P. 26(a)(2)(C)

(stating that expert "not required to provide a written report" under Rule 26(a)(2)(B) need only disclose "the subject matter on which the witness is expected to present evidence" and provide "a summary of the [expert's] facts and opinions"). Nor has 3M established that Mr. Murphy "is being offered principally for expert testimony" so as to fall under Rule 26(a)(2)(B)'s purview, or that he "failed to disclose [in his summary] all technical facts that [Andover] intend[s] to elicit from Mr. Murphy at trial." (D.I. 316-5 at p. 69 of 70) As an expert, Mr. Murphy will be permitted to testify to anything properly disclosed in his reports. He will also be permitted to testify as a fact witness. The Court will rule on objections to specific questions at trial.

                                                                                    */s/ Leonard P. Stark*
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT